1

2

3

4

5

6

7

8                            IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALONZO McKINNEY,

11              Plaintiff,                    No. CIV S-02-2496 FCD GGH P

12        vs.

13   GRAY DAVIS, et al.,

14              Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  This action is proceeding on the amended complaint filed October 17, 2003.

19              Pending before the court is the August 18, 2006, summary judgment motion filed

20   on behalf of defendants Avila, Battey, Bisford, Cobb, Felker, Gillam, Gunter, Kosub, Lucarelli,

21   Miranda and Peery.  After carefully reviewing the record, the court recommends that defendants'

22   motion be granted.

23              Although defendants Williams and Blankenship were served, they have not

24   appeared.  Nevertheless, because the claims against the defendants who have moved for summary

25   judgment are intertwined with the claims against defendants Williams and Blankenship, the court

26   will sua sponte recommend that summary judgment be granted to defendants Williams and

                                             1

1  Blankenship as well.  See Cool Fuel, Inc. v. Connett, 685 F.3d 309 (9th Cir. 1982).

2  II. Summary Judgment Standards Under Rule 56

3           Summary judgment is appropriate when it is demonstrated that there exists "no

4  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

5  matter of law."  Fed. R. Civ. P. 56(c).

6           Under summary judgment practice, the moving party

7           always bears the initial responsibility of informing the district court
           of the basis for its motion, and identifying those portions of "the
8           pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
9           demonstrate the absence of a genuine issue of material fact.

10  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

11  P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

12  issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

13  depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

14  should be entered, after adequate time for discovery and upon motion, against a party who fails to

15  make a showing sufficient to establish the existence of an element essential to that party's case,

16  and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

17  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

18  necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

19  should be granted, "so long as whatever is before the district court demonstrates that the standard

20  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

21  2553.

22           If the moving party meets its initial responsibility, the burden then shifts to the

23  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

24  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

25  (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

26  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

1    specific facts in the form of affidavits, and/or admissible discovery material, in support of its

2    contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

3    106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

4    material, i.e., a fact that might affect the outcome of the suit under the governing law, see

5    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

6    Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

7    dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

8    nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

9           In the endeavor to establish the existence of a factual dispute, the opposing party

10   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

11   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

12   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

13   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

14   genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

15   56(e) advisory committee's note on 1963 amendments).

16          In resolving the summary judgment motion, the court examines the pleadings,

17   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

18   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

19   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

20   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

21   at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

22   obligation to produce a factual predicate from which the inference may be drawn.  See Richards

23   v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

24   (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

25   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

26   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

1  'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

2          On August 18, 2004, the court advised plaintiff of the requirements for opposing a

3  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u> <u>Rand v. Rowland</u>, 154

4  F.3d 952, 957 (9th Cir. 1998) (<u>en</u> <u>banc</u>); <u>Klingele v. Eikenberry</u>, 849 F.2d 409, 411-12 (9th Cir.

5  1988).

6  III.  <u>Discussion</u>

7          A.  <u>Defendants Gillam, Lucarelli, Battey, Felker, Gunter, Williams  and</u>

8  <u>Blankenship</u>

9          Plaintiff alleges that defendants violated the Eighth Amendment and the Due

10  Process Clause by failing to grant him single cell status following his transfer to High Desert

11  State Prison (HDSP) on May 9, 2001.

12          The following facts are undisputed.  On July 8, 1999, plaintiff was sent to

13  California State Prison-Lancaster (Lancaster).  Defendants' Exhibit A, p. 7.  Plaintiff's housing

14  status at Lancaster from July 8, 1999, to April 11, 2000, is not clear.  However, on April 12,

15  2000, plaintiff was placed on single cell status due to program failure and change in custody

16  status from "max B to clo-B."  Plaintiff's opposition, exhibit 3.

17          At some point, plaintiff was returned to double cell status because at his January

18  25, 2001, annual review, the classification committee stated that plaintiff remained "double cell

19  appropriate."  <u>Id.</u>, pp. 8-10.  On March 8, 2001, a classification committee at Lancaster issued a

20  report stating, "'S' meets the criteria for 270 design housing and remains single cell appropriate.

21  After reviewing all case factors, committee acts to place on ABE-II for testing and S waiting list

22  and retain on single cell status."  Although not entirely clear from this report, plaintiff was

23  apparently placed on single cell status at Lancaster due to psychiatric concerns and his refusal to

24  double cell.  <u>Id.</u>, p. 17.

25          On May 9, 2001, plaintiff was transferred to HDSP.  <u>Id.</u>, p. 5.  On May 15, 2001,

26  plaintiff appeared before the HDSP classification committee.  <u>Id.</u>, p. 11.  Only defendant

1    Blankenship was a member of this committee.  Id.  The committee report incorrectly stated that

2    plaintiff had not previously had single cell status.  Id.  The committee also found that plaintiff did

3    not meet the criteria for single cell status.  Id.  Plaintiff refused to be double celled.  Id., p. 17.

4           On August 22, 2001, plaintiff appeared before another classification committee,

5    of which defendants Lucarelli and Williams were members.  Id.  This committee was aware of

6    plaintiff's prior single cell status at Lancaster.  Id.  Plaintiff told the committee that if he were

7    double celled, "anything could happen, including death."  Id.  As a result of this comment,

8    plaintiff was placed in administrative segregation for threatening violence.  Id., p. 18.  The

9    August 22, 2001, committee did not grant plaintiff single cell status.

10          Plaintiff was not forced to double cell.  Id.  However, he was disciplined for

11   refusing to double cell and punished for threatening to harm his potential cell partner.

12   Defendants' Exhibit B.

13          *Eighth Amendment*

14          A prison official violates the Eighth Amendment when two requirements are met.

15   First, the deprivation alleged must be, objectively, "sufficiently serious."  Farmer v. Brennan, 511

16   U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).  The inmate must show that he is incarcerated

17   under conditions posing a substantial risk of harm.  Id.  Second, a prison official must have a

18   "'sufficiently culpable state of mind'...[T]hat state of mind is one of 'deliberate indifference' to

19   inmate health or safety."  Id.  The prison official will be liable only if "the official knows of and

20   disregards an excessive risk to inmate health and safety; the official must both be aware of facts

21   from which the inference could be drawn that a substantial risk of serious harm exists, and he

22   must also draw the inference."  Id. at 837, 114 S. Ct. at 1979.

23          Defendants argue that they are entitled to summary judgment because there is no

24   evidence that double celling plaintiff at HDSP posed a substantial risk of serious harm to

25   plaintiff.  As discussed above, approximately two months prior to his transfer to HDSP plaintiff

26   was placed on single cell status at Lancaster due to mental health concerns and for his refusal to

1  double cell.   Plaintiff's refusal to double cell as a justification for his single cell status at

2  Lancaster did not create a serious risk of harm justifying single cell status at HDSP.

3         It is unclear why plaintiff's mental health problems justified his single cell status

4  at Lancaster.  If plaintiff was placed on single cell status to protect other inmates, then

5  defendants' failure to give plaintiff single cell status did not create a risk of serious harm to

6  plaintiff.  On the other hand, if plaintiff was placed on single cell status for his own protection,

7  then defendants' failure to grant him single cell status may have created a serious risk of harm to

8  plaintiff.

9         However, it is not reasonable to infer from the record that plaintiff was placed on

10  single cell status at Lancaster for his own protection, because inmates are often placed on single

11  cell status based on the danger they pose to other inmates.  It is plaintiff's burden to demonstrate

12  that he was placed on single cell status at Lancaster for his own protection.  See Richards v.

13  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

14  (9th Cir. 1987) (nevertheless, inferences are not drawn out of the air, and it is the opposing

15  party's obligation to produce a factual predicate from which the inference may be drawn).

16  Because plaintiff has not met this burden, and because no other evidence in the record

17  demonstrates that plaintiff faced a substantial risk of serious harm from being double celled at

18  HDSP, the court recommends that defendants be granted summary judgment as to this claim.

19         The court also observes that when plaintiff appeared before the first classification

20  committee at HDSP of which defendant Blankenship was a member, the committee was unaware

21  of plaintiff's previous single cell status.  Under these circumstances, the court could not find that

22  defendant Blankenship acted with deliberate indifference.  In other words, assuming a serious

23  harm existed were plaintiff double celled, defendant Blankenship was not aware of this risk.

24  Accordingly, the court recommends that defendant Blankenship be granted summary judgment

25  on this ground as well.

26  \\\\\

1        In his opposition, plaintiff argues that defendants should have placed him on

2    single cell status due to his enemy concerns and because he had a fight with a cellmate.  In

3    support of this claim, plaintiff cites his exhibits F and G.  Exhibit F is a chrono dated December

4    10, 2004, stating that on that date plaintiff engaged in a fight with his cellmate at California State

5    Prison-Corcoran.  The chrono states that plaintiff's cellmate stated that the fight was "a

6    disrespect issue."  Plaintiff's fight with his cellmate at Corcoran long after his transfer to HDSP

7    over a "disrespect" issue does not support his Eighth Amendment claim against defendants.

8        Exhibit G is a confidential information disclosure form dated August 23, 2006,

9    stating that plaintiff could not return to C Facility due to "problems" on C Facility.  This

10   document was apparently prepared at California State Prison–Sacramento, where plaintiff is

11   presently incarcerated.  This document also does not support his Eighth Amendment claim

12   against defendants.

13   *Due Process*

14       Plaintiff argues that defendants' failure to place him on single cell status violated

15   his right to due process.  Liberty interests protected by the Due Process Clause arise only in

16   connection with matters pertaining to the imposition of "atypical and significant hardship on the

17   inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484,

18   115 S. Ct. 2293, 2300 (1995).

19       To the extent that plaintiff claims a violation of substantive due process, such a

20   claim is superseded by the Eighth Amendment, and it is the Eighth Amendment standards which

21   must be applied.  See County of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S. Ct. 1708

22   (1998).  To the extent that plaintiff claims a liberty interest created by the federal constitution,

23   single cell status has not been found to be a right protected by procedural due process.  Generally,

24   prison classifications do not give rise to a federal liberty interest.  Hernandez v. Johnston, 833

25   F.2d 1316, 1318 (9th Cir.1987).  To the extent that plaintiff claims a liberty interest derived from

26   state law, plaintiff demonstrates neither the provision of state law which might give rise to this

1  interest, not does he identify any due process to which he was due that he did not get.  See Myron

2  v. Terune, 457 F.3d 996, 998 (9th Cir. 2006).  Failing to get what one asks for is not a denial of

3  procedural due process.

4  Accordingly, defendants should be granted summary judgment as to this claim.

5  B.  Defendants Bigford and Miranda

6  Plaintiff alleges that after he arrived at High Desert State Prison on May 9, 2001,

7  defendant Bigford confiscated his tennis shoes, television, radio and watch because plaintiff

8  refused to double cell.  This property was mailed to plaintiff's home.  Plaintiff also alleges that

9  defendant Bigford improperly had the property mailed out before plaintiff's administrative

10  grievances were completed regarding the confiscation of the property.  Plaintiff also alleges that

11  defendant Bigford confiscated the television and radio on grounds that they were broken without

12  giving plaintiff an opportunity to have these items repaired.  Plaintiff alleges that defendant

13  Miranda confiscated his watch on grounds that it was broken without giving plaintiff an

14  opportunity to have it repaired.

15  Plaintiff's claims against defendants Bigford and Miranda suggest a claim for

16  violation of plaintiff's right to due process with regard to the confiscation of his property.

17  The United States Supreme Court has held that "an unauthorized intentional

18  deprivation of property by a state employee does not constitute a violation of the procedural

19  requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful

20  postdeprivation remedy for the loss is available."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).

21  Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional

22  deprivations constitute actionable violations of the Due Process Clause.  An authorized

23  deprivation is one carried out pursuant to established state procedures, regulations, or statutes.

24  Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of

25  Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

26  \\\\\

1    While plaintiff alleges that the confiscation of his property was intentional, his

2  allegations indicate that the confiscations were not authorized.  In particular, plaintiff's claim that

3  defendants failed to allow him to have his watch, television and radio repaired before mailing the

4  property out suggests that defendants failed to follow the prison procedures regarding the

5  confiscation of property.  Plaintiff also argues in his opposition that his property was not broken,

6  as alleged by defendants.  If the property was not broken, then the confiscation was not

7  authorized, at least based on the theory put forth by plaintiff.

8    Finally, plaintiff's claim that defendants mailed the property out before plaintiff's

9  administrative grievances were completed also suggests that defendants failed to follow the

10  proper procedures regarding property confiscation.  The failure to follow proper procedures

11  indicates that the confiscation and disposal of plaintiff's property was not authorized.

12    The California Legislature has provided a remedy for tort claims against public

13  officials in the California Government Code, §§ 900, et seq.  Because a meaningful post-

14  deprivation remedy is available, plaintiff's claim alleging the unauthorized deprivation of his

15  property in violation of his right to due process must fail.

16    Plaintiff's claims also suggest a retaliation claim against defendant Bigford

17  regarding the confiscation of his property.  Plaintiff alleges that defendant Bigford confiscated

18  this property in retaliation for plaintiff's refusal to double cell.

19    In order to succeed on a claim of retaliation, plaintiff must demonstrate five

20  elements: 1) an assertion that a state actor took some adverse action against him 2) because of 3)

21  the prisoner's protected conduct, and that such action, 4) chilled the inmates's exercise of his

22  First Amendment rights, and 5) the action did not reasonably advance a legitimate correctional

23  goal.  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  If the prisoner does not allege a

24  chilling effect, allegations that he suffered more than minimal harm will almost always have a

25  chilling affect.  Id., no. 11.

26  \\\\\

1    In the instant case, plaintiff alleges that defendant Bigford confiscated his property

2    because he refused to double cell.  As discussed above, plaintiff had no constitutional right to

3    refuse to double cell and nor did plaintiff have a right to a single cell.  Therefore, plaintiff has not

4    demonstrated that defendant Bigford's actions were a result of plaintiff's exercise of his

5    constitutionally *protected* rights.  Accordingly, defendant Bigford should be granted summary

6    judgment as to plaintiff's retaliation claim.

7    　　　　　　　　　C.  Defendants Avila, Kosub, Cobb

8    　　　　Plaintiff alleges that defendants Avila, Kosub and Cobb violated his right to

9    access the courts.  In order to demonstrate a violation of the right to access the courts, an inmate

10   must demonstrate that he suffered an actual injury.  Lewis v. Casey, 518 U.S. 343, 116 S. Ct.

11   2174 (1996).  An actual injury is demonstrated when a prisoner proves that a defendant's actions

12   hindered his ability to pursue a non-frivolous claim.  Id.

13   　　　　Plaintiff alleges that the Ninth Circuit Court of Appeals ordered him to pay the

14   filing fee in a case on appeal.  Plaintiff alleges that the filing did not get paid, and the appeal was

15   dismissed, because defendants Avila and Cobb failed to keep an accurate record of his trust

16   account.

17   　　　　The parties do not dispute that on March 18, 2002, in McKinney v. Oeland, No.

18   02-5512, the Ninth Circuit ordered plaintiff to pay the filing fee.  The parties do not apparently

19   dispute that at the time plaintiff was ordered to pay the filing fee, his trust account statement

20   indicated that he had no money in his account.  The parties do not dispute that on April 26, 2002,

21   plaintiff's appeal was dismissed because he failed to pay the filing fee.

22   　　　　Plaintiff is apparently arguing that in March-April 2002 he had enough money in

23   his trust account to pay the filing fee ordered by the Ninth Circuit.  The trust account statement

24   attached to plaintiff's opposition as exhibit A-11 indicates that as of March 13, 2002, plaintiff

25   had no money in his trust account.  Other than the conclusory assertion contained in his

26   complaint, plaintiff has offered no evidence demonstrating that either defendant Avila or Kosub

1  mismanaged his trust account.  Accordingly, defendants should be granted summary judgment as

2  to this claim.

3        Plaintiff alleges that defendant Cobb, the law librarian, violated his right to access

4  the courts by refusing to let him make legal copies of documents for another inmate whom

5  plaintiff was assisting.  Plaintiff has not demonstrated how his inability to make a copy of a

6  document belonging to another inmate interfered with his right to access the courts.  Plaintiff

7  does not allege, for example, that his ability to prosecute a non-frivolous action was hampered or

8  that an action was dismissed.  Accordingly, defendant Cobb should be granted summary

9  judgment.

10        D.  Housing

11        Plaintiff alleges that he was denied a hardship transfer to a prison closer to his

12  family and was inappropriately housed at HDSP because it is a higher security facility.  Plaintiff

13  has no constitutional right to be housed in a particular prison.  Meachum v. Fano, 427 U.S. 215,

14  96 S. Ct. 2532 (1976).  Nor does plaintiff have a right to a particular classification status.

15  Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987).  Accordingly, defendants should be

16  granted summary judgment as to these claims.

17        Plaintiff also alleges that defendants violated state law by failing to transfer him to

18  a prison closer to his family.  Because the court has determined that defendants are entitled to

19  summary judgment as to the plaintiff's claims alleging violation of his constitutional rights, it

20  declines to exercise jurisdiction over his state law claim.  28 U.S.C. § 1367(c).

21        Accordingly, IT IS HEREBY RECOMMENDED that defendants' August 18,

22  2006, summary judgment motion be granted and this action be dismissed.

23        These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

25  days after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within ten days after service of the objections.  The parties are advised

3   that failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5   DATED:   1/24/07

                                                    /s/ Gregory G. Hollows

6                                                   _____

7                                                   GREGORY G. HOLLOWS
                                                    UNITED STATES MAGISTRATE JUDGE

8

9   mck2496.sj

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26